## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NANCY MCDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 20 C 6572 |
| | ) | |
| DUPAGE PUBLIC SAFETY | ) | |
| COMMUNICATIONS d/b/a DU-COMM, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter is before the Court on Defendant DuPage Public Safety Communications d/b/a Du-Comm's ("Du-Comm") Motion for Summary Judgment under Federal Rule of Civil Procedure 56. For the following reasons, the Motion is granted.

## BACKGROUND

In this employment discrimination case, Plaintiff Nancy McDonald alleges that her employer, Du-Comm, discriminated against her due to her age, gender, and disability in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et*

*seq.*, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-101 *et seq*. Du-Comm moves for summary judgment on all claims.

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.

Du-Comm is a consolidated 911 communication center responsible for receiving emergency 911 calls and dispatching police, fire, and EMS personnel. Du-Comm's telecommunicators are responsible for answering emergency 911 calls and dispatching fire, police, or EMS calls for service.

McDonald started working for Du-Comm in 2006 as a telecommunicator. She eventually became a "Telecommunicator II," which is certified to either be a police dispatcher or a fire dispatcher. During the relevant time period, Brian Tegtmeyer was the Executive Director of Du-Comm, and Angela Athitakis was Du-Comm's Director of Human Resources ("HR").

While employed at Du-Comm, McDonald worked closely with police officers as part of her daily job duties as a telecommunicator. DuComm's relationship with police departments is important, as is the trust between police officers and telecommunicators. Police officers must be able to rely on Du-Comm's dispatchers, and telecommunicators must be able to follow orders and direction from police officers. If a police officer gives

an order or direction to an individual, like "step outside of a home," that individual is expected to comply.

### *Du-Comm's Policies*

McDonald agrees she was expected to follow Sections 1-10, 5-1, and 5-4 of Du-Comm's Personnel Manual. Section 5-1 lists as potential grounds for termination: dishonesty or lying, violation of federal or state laws, behavior or conduct offensive or undesirable or which is contrary to Du-Comm's best interest, and any other violation of Du-Comm's written directives or Personnel Manual. Similarly, Section 5-4 holds that Du-Comm's employees "are required to maintain high ethical standards and act with honesty and integrity at all times," and "[i]f an employee fails to abide by these standards it can be grounds for disciplinary action, up to and including termination." Dkt. # 89, ¶ 9.

Section 1-10 requires Du-Comm's employees to report on or off duty incidents that:

> [W]ould involve the violation of the personnel manual or written directives, state and/or federal laws, or otherwise harm the reputation of DU-COMM, they have an obligation to notify their Department Head, of any arrest, charge, conviction, or violation (other than minor traffic offenses) immediately upon reporting to duty or within forty-eight (48) hours of the incident, whichever is first, to allow for investigation and review of the conduct under DU-COMM policies and evaluation of the impact on the employee's qualifications to perform job duties.

*Id.*, ¶ 6.

Section 1-10 further requires that this "[n]otification should be in writing, in the employee's own words as to the details of the incident." *Id.* Failure to abide by the notification requirement is grounds for discipline up to and including termination. *Id.* Prior to the existence of Du-Comm's Personnel Manual (eff. September 18, 2018), Du-Comm did not have a policy requiring employees to notify Du-Comm in the event they were arrested while off duty.

### McDonald's July 1, 2019, Domestic Incident

On July 1, 2019, the Batavia Police Department responded to a call at McDonald's home (the "July 1 incident"). More than once, the police officers asked McDonald if she would come outside her house so they could speak with her. McDonald refused. Instead, she was "very belligerent" while talking to the police officers at the front door and refused to put her dogs away. *Id.*, ¶ 26.

The police officers determined that McDonald was going to be arrested. They told McDonald that she was under arrest and needed to exit the home. McDonald did not come out. Instead, she swore at the officers, closed the door, locked it, and turned off all the lights in the house. *Id.*, ¶ 36. McDonald effectively ended the encounter with the police officers by stating "I am done talking," shutting the window, going to bed, and turning off the lights. *Id.*, ¶ 37. The officers testified that they left the scene because they did not want to escalate the situation any further, and they could resolve the problem by obtaining an arrest warrant.

On July 2, 2019, the police officers obtained a warrant for McDonald's arrest for resisting or obstructing a police officer (among other things).

### McDonald's Reporting of the July 1 Incident

McDonald reported to work at Du-Comm on July 3, 4, and 5, 2019. She had a conversation with her supervisor, Cara Payne, on July 3, in which she disclosed an incident at her home involving the police and that she had gotten into an argument with her kids. She did not inform Payne that she refused to obey a police officer's orders.

McDonald became aware that she was the subject of an arrest warrant on July 7 or 8, 2019. She understood a charge was needed to obtain an arrest warrant. That notwithstanding, McDonald still did not inform Du-Comm of the incident on July 7 or 8, 2019. Instead, McDonald turned herself in to the Batavia Police Department on July 9, 2019.

The next day, McDonald met with Du-Comm's HR Director, Angela Athitakis, her Union Steward Brian Marek, and Madelyn Walsh. McDonald handed Athitakis a handwritten note stating "on 7/2/2019 there was a domestic [dispute] between my kids and myself. Police were called. On 7/9/19 at 8AM I was arrested and released." *Id.*, ¶ 48. Although Section 1-10 of the Personnel Manual required her to provide "details of the incident," McDonald did not provide additional information during the July 10, 2019 meeting. Athitakis asked McDonald whether McDonald was charged with anything, but McDonald did not say she was charged with obstructing a police officer.

Athitakis had to reach out to the Batavia Police Department for a verbal summary of the July 1 incident.

On July 12, 2019, the Kane County Chronicle reported that McDonald was charged with "resisting or obstructing a police officer by locking herself inside her residence and guarding herself with two large and agitated dogs after being informed she was under arrest . . . ." Dkt. # 89, ¶ 53.

On July 12, 2019, Director Tegtmeyer placed McDonald on paid administrative leave pending an investigation. On November 20, 2019, McDonald participated in a pre-disciplinary hearing, where she spoke with Tegtmeyer and presented mitigation evidence.

### *McDonald's Termination*

On December 6, 2019, McDonald was convicted by a jury of resisting or obstructing a police officer in contravention of 720 ILCS 5/31-1(a). Ten days later, on December 16, 2019, Director Tegtmeyer discharged McDonald via a memorandum. Director Tegtmeyer explained:

> I have decided to terminate your employment with DU-COMM effective December 16, 2019, for engaging in conduct that violates the DU-COMM Personnel Manual, including Sections 1.10 - Disclosure of incident, 5.1 – Workplace Conduct, and 5.4 - Code of Ethics. For example, you failed to appropriately disclose the July 1, 2019, incident in accordance with Section 1.10; you provided false information on your untimely letter you submitted on July 10; and you have been convicted of violating state law. As you know, you are a police dispatcher. You interact with police officers on a daily basis. While you acknowledged that a person is expected to comply with a police officer's order, you failed to do so on July 1, 2019, when you obstructed and resisted a Batavia police officer.

> This conduct is inappropriate for a representative of a public safety agency, and DU-COMM specifically. Each of these reasons, independently and together form the basis for your dismissal.
>
> Separately and independently from the above reasons for your dismissal, DU-COMM believes that your conviction prohibits you from continuing to maintain LEADS[1] certification. DU-COMM has notified LEADS of your conviction for resisting/obstructing a police officer. As you acknowledged during your pre disciplinary meeting, LEADS certification is a requirement of your job.

*Id.*, ¶¶ 60, 71.

According to Tegtmeyer, "resisting and obstructing a police officer is a serious charge and it's not compatible with [McDonald's] job as a 911 telecommunicator." *Id.*, ¶ 62. This is because McDonald had to be able to take direction from police officers, and Tegtmeyer felt "strongly that if you're not listening to them off-duty, I can't trust that you're gonna listen to them on duty." *Id.* Tegtmeyer testified that he could not trust McDonald to follow directions from a police officer moving forward. Tegtmeyer also testified that part of his decision to terminate McDonald was based on McDonald's conduct damaging Du-Comm's reputation.

Tegtmeyer also believed that McDonald had committed the most serious crime he had encountered of a Du-Comm employee in his tenure. Other employees had been arrested for traffic offenses like driving under the influence ("DUI"), but in Tegtmeyer's view, a DUI is "not directly related to the duties of a telecommunicator like following a police officer's lawful order." *Id.*, ¶ 65.

---

[1] Law Enforcement Agencies Data System.

McDonald challenged her termination by filing a grievance via her union, which eventually culminated in an arbitration hearing.  In a written award, the arbitrator denied McDonald's grievance and found Du-Comm had just cause to discharge McDonald.

### McDonald's Past Issues with Alcohol Consumption

McDonald asserts that, prior to 2019, Du-Comm was aware she had "issues" with alcohol consumption and even warned her in writing that it would be monitoring her alcohol consumption and that drinking outside of work that then impacts work is not tolerated.  Du-Comm, for its part, admits that in June 2009 and January 2011, it became aware the McDonald was having some "issues with alcohol consumption."  Dkt. # 92, ¶ 24.  In January 2011, HR Director Athitakis wrote in an investigatory interview that she told McDonald that "[d]rinking outside of work that then impacts her working hours is not tolerated and will [be] watched for."  *Id.*, ¶ 24.  Du-Comm denies that McDonald was ever "warned in writing" about her alcohol consumption.

During the July 3 conversation with her supervisor, McDonald told Payne that she was struggling with the recent death of a friend, Officer Kenneth Lister[2], and she was drinking excessively and feeling like she wanted to drink more.  At that time,

---

[2] On June 17, 2019, while on the job, McDonald learned that her friend, Officer Kenneth Lister, committed suicide.  Shortly after learning the news, McDonald, distraught and crying, stopped Tegtmeyer and told him of Officer Lister's suicide.  Although Du-Comm has previously provided a chaplain for telecommunicators involved in traumatic events and has also removed employees from the floor due to a traumatic event, McDonald worked her entire shift on June 17, 2019, without Du-Comm ever providing her a chaplain or removing her from the floor. However, McDonald did not ask her supervisor, the floor manager, or Tegtmeyer to be removed from the floor.

McDonald requested—and received—information about Du-Comm's Employee Assistance Program.

Payne later wrote a memo to Tegtmeyer about her July 3 conversation with McDonald, stating in part that McDonald said she "felt like she was losing it," "McDonald also said she was feeling like she wanted to drink more," and she thought that Officer Lister's death might have been impacting McDonald. *Id.*, ¶ 34.

McDonald also claims that Du-Comm was aware that she received treatment for one or more mental health issues, had "anxiety issues," and that McDonald informed Du-Comm in 2009 that she had a "nervous breakdown." *Id.*, ¶ 25. Du-Comm admits that in 2009, it became aware that McDonald had received treatment for one or more mental health issues when it was reported that she had a "nervous breakdown," but denies that McDonald subsequently notified it about disabling "anxiety issues." *Id.*

Du-Comm admits that it "did not engage in an interactive process with [McDonald] with regard to an accommodation for the disabilities alleged in the Complaint,"[3] but says that McDonald "never initiated said process nor informed [Du-Comm] that she had a disability that required accommodation in the first instance." *Id.*, ¶ 37. Tegtmeyer testified that Du-Comm did not perceive McDonald to have a disability.

---

[3] McDonald alleges she has the following disabilities: major depression, bipolar disorder, anxiety, and alcoholism. Dkt. # 1, ¶16.

*Comparators*

In opposing summary judgment, McDonald offers three current or former Du-Comm telecommunicators whom she alleges were treated more favorably despite engaging in similar misconduct: Timothy Beguhl, Jeff Klein, and Gabe Gabrys. All three proposed comparators are male and not disabled.

Between March 2006 and May 2021, Du-Comm disciplined Timothy Beguhl 23 times for various infractions including tardiness, delay of an ambulance in 2008, and "operational errors" on eight separate occasions. *Id.*, ¶ 4. Du-Comm also disciplined Beguhl for making four prank phone calls to 911.

In 2012, Beguhl was arrested for a DUI that involved a rear-end collision with another car. In connection with his DUI, Du-Comm learned that Beguhl told police that he worked at Du-Comm and asked if there was anything that could be done. Du-Comm stated in Beguhl's disciplinary report that "[u]sing Du-Comm to try and get out of a DUI arrest is completely unacceptable." *Id.*, ¶ 7.

Beguhl told falsehoods to the police in connection with his DUI, and Du-Comm admits that Beguhl's DUI caused him to not meet Du-Comm's reasonable work performance expectations. Other 911 dispatchers were talking about Beguhl's DUI at the time he was arrested. Du-Comm gave Beguhl a two-day suspension as discipline for the DUI but did not issue any sort of warning to Beguhl that drinking outside of work that then impacts work is not tolerated. As of December 15, 2021, Beguhl was still employed by Du-Comm.

Jeff Klein was arrested in 2012 for a DUI while he worked for Du-Comm as a telecommunicator. Du-Comm admits that Klein did not bring this 2012 off-duty DUI incident to the attention of management but denies that such reporting was required at the time. After speaking with Klein, Tegtmeyer decided to reduce the initial discipline for Klein's DUI and gave Klein a two-day rather than three-day suspension.

Gabe Gabrys was arrested on July 29, 2018, for operating a watercraft under the influence of alcohol. Gabrys pleaded guilty to the offense on September 26, 2018. Gabrys was also involved in a domestic incident that police responded to. Gabrys initially was not forthcoming or truthful regarding the domestic incident, but Du-Comm did not regard Gabrys's lack of truthfulness as a terminable offense.

Tegtmeyer did not assess "good character" in connection with Beguhl's DUI nor with Klein's DUI, nor with regard to any discipline ever issued by Du-Comm to Gabrys. Du-Comm admits it currently employs dispatchers who failed to meet or exceed its reasonable performance expectations with regard to their work duties.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all

11

reasonable inferences in that party's favor. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (cleaned up). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. And the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## DISCUSSION

As an initial matter, McDonald purports to bring a claim against Du-Comm for age discrimination in violation of the ADEA. But neither the parties' Local Rule 56.1 statements nor McDonald's briefing mention age—other than passing references and

headings.[4]    Therefore, the Court deems McDonald's ADEA claim, and any corresponding age discrimination claim brought under the IHRA, abandoned.  We address McDonald's remaining claims in turn.

## I.    Gender Discrimination Claims

McDonald brings gender discrimination claims under both Title VII and the IHRA.  At the summary judgment stage, courts generally apply the same analysis to discrimination claims brought under the IHRA as they apply to Title VII claims.  *See Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 403 (7th Cir. 2007).  We therefore analyze both claims under Title VII.  *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016) (analytical framework for Title VII and IHRA "virtually identical" and claims do not need to be analyzed separately).

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions[,] or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e–2(a)(1).  The determinative question in discrimination cases is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's sex caused the adverse employment action.  *Igasaki v. Illinois Dep't of Fin. & Prof'l Regul.*, 988 F.3d 948, 958 (7th Cir. 2021) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).  The question is whether

---

[4] While the Complaint alleges that McDonald is over the age of 40, there is no information in the record as to how old McDonald's proposed comparators are.  In any event, even if the ADEA claim was not abandoned, it would still fail for the same reasons McDonald's Title VII claim fails.

13

the totality of the evidence shows discrimination, eschewing any framework or formula. *Ortiz*, 834 F.3d at 765.

In this case, the parties opted to proceed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This approach requires McDonald to make a *prima facie* case of discrimination, and if she does so, the burden shifts to Du-Comm to offer a nondiscriminatory reason for the adverse employment action. If Du-Comm does so, the burden then shifts back to McDonald to show that Du-Comm's stated reason was pretext.

### *Prima Facie Case of Discrimination*

To establish a *prima facie* case of sex discrimination, McDonald must show: (1) she belongs to a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated employee outside of her protected class received better treatment from her employer. *Igasaki*, 988 F.3d at 958 (quoting *Ortiz*, 834 F.3d at 765). Du-Comm argues McDonald cannot meet her burden as to the second and fourth elements.

First, the similarly situated employee. The Seventh Circuit has said in this context that similarly situated employees must be "directly comparable" to the plaintiff "in all material respects, which includes showing that coworkers engaged in comparable rule or policy violations." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009) (cleaned up). This means that McDonald must identify a comparison

14

employee who is male, worked as a telecommunicator, engaged in the same or comparable misconduct, and was treated more favorably.

McDonald offers up three current or former male Du-Comm telecommunicators as comparators: Timothy Beguhl, Jeff Klein, and Gabe Gabrys. It is undisputed that McDonald was the only telecommunicator who was convicted of resisting or obstructing a police officer. The burning question then, is whether one or more of the comparators engaged in comparably serious misconduct.

At the outset, Gabrys is not a proper comparator because the discipline and investigation related to Gabrys's DUI was not handled by Tegtmeyer. *See Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 826–27 (7th Cir. 2008) ("Different decisionmakers may rely on different factors when deciding whether, and how severely, to discipline an employee. So, to be similarly situated, [an employee] must have been treated more favorably by the same decisionmaker that fired the [plaintiff].").

Beguhl was arrested in 2012 for a DUI. Beguhl lied to the police in connection with his DUI and asked the police if there was anything that could be done because he was a Du-Comm employee. Du-Comm admits that Beguhl's DUI caused him to not meet Du-Comm's reasonable employment expectations. Beguhl received a two-day suspension because of his DUI. Du-Comm did not issue any sort of warning to Beguhl that drinking outside of work that then impacts work is not tolerated. Beguhl was also disciplined for making four prank phone calls to 911.

Klein was arrested for a DUI in 2012 and did not report it to management at the time it occurred. Klein was given a two-day suspension.

McDonald insists that the gravity of the proposed comparators' offenses—DUI, failure to timely report an incident, dishonesty, and making prank phone calls to 911—is the same as resisting or obstructing a police officer.

McDonald's argument about failure to report misconduct misses the mark. While McDonald places much emphasis on the proposed comparators' failure to timely report their misconduct, she hasn't come forth with any evidence showing that the comparators were subject to the same reporting requirements. In fact, Du-Comm's Personnel Policy that was in effect at the time of McDonald's termination became effective only in September 2018, after all of the comparators' DUIs and other misconduct occurred. *See Antonetti v. Abbott Labys.*, 563 F.3d 587, 592 (7th Cir. 2009) (employees are not considered similarly situated where, even if they engaged in similar misconduct, differentiating or mitigating circumstances would distinguish their conduct or the employer's treatment of them).

The next question is whether a DUI is of comparable seriousness to resisting and obstructing a police officer. Both are offenses are a violation of state law, which in turn is a violation of Du-Comm's policies and possible grounds for termination.

Du-Comm argues that McDonald's offense was far more serious than the comparators' DUIs. Director Tegtmeyer testified that resisting and obstructing a police officer is a serious charge which is incompatible with McDonald's role as a

16

telecommunicator. In that role, McDonald needed to be able to take direction from police officers. It is without question that trust between police officers and telecommunicators is important, and police officers must be able to rely on a telecommunicator's ability to follow instructions. In Tegtmeyer's view, "if you're not listening to [police officers] off-duty, I can't trust that you're gonna listen to them on duty." Dkt. # 89, ¶ 62. Tegtmeyer did not believe he could trust McDonald to follow directions from a police officer. A DUI, on the other hand, does not directly relate to the duties of a telecommunicator like following a police officer's lawful order.

Du-Comm argues that, at most, McDonald has shown that "Du-Comm—a police dispatching agency—unsurprisingly treats conviction for resisting and obstructing a police officer more harshly than being charged with a DUI." Dkt. # 93, at 4. This, Du-Comm says, does not evince discrimination and Du-Comm was well within its rights as an employer to make such a judgment. This is not an unreasonable position for Du-Comm to take, given the nature of Du-Comm's business. Context matters.

Du-Comm supports its claim with *Franklin v. City of Evanston*, 384 F.3d 838 (7th Cir. 2004). In *Franklin*, the plaintiff was discharged after being arrested for possession of marijuana, and tried to claim other employees were similarly situated because they had been arrested for DUI—both misdemeanor offenses under Illinois law at the time. *Id.* at 847. The Seventh Circuit rejected the plaintiff's argument, commenting that the fact that the defendant did not terminate the employees arrested for DUI "indicates that, rightly or wrongly, the [defendant] simply treats DUI less

harshly than the possession of marijuana. This does not amount to unlawful discrimination." *Id.*

It's worth noting that the proposed comparators in *Franklin* also had different supervisors who were responsible for deciding on discipline. The Seventh Circuit found that each of these things were sufficient reasons to support a finding that the employees were not similarly situated. *Id.*

Here, Du-Comm's argument is better suited for the pretext analysis. A reasonable juror could easily conclude that a DUI is at least as serious of an offense as resisting or obstructing a police officer, and perhaps even more so. DUI puts not only the life of the driver at risk, but also the lives of everyone on the road. And, Beguhl lied to the police in connection with his DUI, which can affect the level of trust between telecommunicator and police officer.

Even if the Court were to conclude that a DUI is not as serious of an offense, what about the severity of Beguhl's prank phone calls to 911 as compared to the severity of McDonald's offense of resisting or obstructing a police officer? Unhelpfully, the parties' briefs are virtually silent on this issue. Neither side attempts to make any sort of meaningful argument in support of or against considering the two offenses to be of comparable seriousness for purposes of being similarly situated.

Again, Du-Comm says resisting or obstructing a police officer is fundamentally incompatible with the position of a telecommunicator. But, in the Court's view, the same can be said of making prank phone calls to 911. The Seventh Circuit has

"repeatedly warned that courts should not draw the question of similarly situated too narrowly." *Dunlevy v. Langfelder*, 52 F.4th 349, 354 (7th Cir. 2022). "The north star in the similarly situated inquiry has always been whether the two employees 'engaged in conduct of comparable seriousness.'" *Id.* (quoting *Coleman v. Donahoe*, 667 F.3d 835, 851 (7th Cir. 2012). Based on the facts of this case, a reasonable jury could find the two offenses comparably serious.

### *Pretext / Legitimate Expectations*

Assuming without deciding that McDonald has identified a similarly situated employee outside of McDonald's protected class that was treated more favorably than McDonald for the same or sufficiently similar conduct, McDonald still must show that she met Du-Comm's legitimate expectations at the time of her termination, "which includes evidence that [s]he did not violate [Du-Comm's] policies." *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010). Du-Comm argues McDonald cannot carry this burden. Du-Comm specifically points to its rules that prohibit dishonesty, violation of federal or state laws, and behavior that is contrary to Du-Comm's best interest. Du-Comm also requires its employees to "maintain high ethical standards and act with honesty and integrity at all times" and exercise "conservative good judgment." Dkt. # 89, ¶ 9. Du-Comm's rules further require an employee to report—in writing—within 48 hours any arrest that involved violation of Du-Comm's rules or state and/or federal law, or an off-duty incident that otherwise

harmed Du-Comm's reputation. It isn't a stretch to say that McDonald's conduct fell below these standards.

McDonald doesn't spend much energy on arguing that she was meeting Du-Comm's legitimate expectations at the time of her termination—other than to claim she did report the July 1 incident as required when she spoke with her supervisor on July 3[5]. Instead, she focuses her efforts on trying to show that while Du-Comm strictly enforced its policies against her, it did not do so with respect to similarly situated male employees.

When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner (i.e., applied expectations to similarly situated male employees in a more favorable manner), the second and fourth prongs of *McDonnell Douglas* merge—allowing the plaintiff to establish a *prima facie* case, stave off summary judgment for the time being, and proceed to the pretext inquiry. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002).

The reasons for McDonald's termination given by Du-Comm were: (1) her conviction for resisting and obstructing a police officer; (2) failing to timely and adequately report the event; and (3) causing Du-Comm reputational damage. These are all legitimate, non-discriminatory reasons for termination. It is therefore McDonald's

---

[5] Yet McDonald admits she did not comply with the requirement that the notification be in writing until July 10.

burden to come forth with enough evidence that would permit a reasonable jury to conclude that Du-Comm's cited reasons for terminating her were pretext. "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically, a phony reason for some action." *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (internal quotation marks omitted).

To meet her burden, McDonald must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in Du-Comm's asserted reason for her termination "that a reasonable person could find [it] unworthy of credence." *Coleman v. Donahoe*, 667 F.3d 835, 852–53 (7th Cir. 2012). The Seventh Circuit has said "time and time again" that "courts are not a super-personnel department that will substitute our criteria for an employer's for hiring, promoting, or disciplining employees." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 933 (7th Cir. 2020); *see also Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) ("To successfully challenge the honesty of the company's reasons [the plaintiff] must specifically rebut those reasons. But an opportunity for rebuttal is not an invitation to criticize the employer's evaluation process or simply to question its conclusion about the quality of an employee's performance. Rather, rebuttal must include facts tending to show that the employer's reasons for some negative job action are false, thereby implying (if not actually showing) that the real reason is illegal discrimination. In other words, arguing about the accuracy of the employer's assessment is a distraction . . . because the question is

not whether the employer's reasons for a decision are '*right* but whether the employer's description of its reasons is *honest.*'").

The primary evidence weighing toward finding pretext is comparator evidence already discussed, which "can do 'double-duty' at both the prima facie and pretext stages." *Coleman*, 667 F.3d at 858; *see also Gordon v. United Airlines, Inc.*, 246 F.3d 878, 892 (7th Cir. 2001). That's because "evidence of selective enforcement of a rule calls into question the veracity of the employer's explanation." *Coleman*, 667 F.3d at 857 (internal quotation marks omitted). That said, however, comparator evidence *alone* does not necessarily suffice to establish pretext. *See id.* at 859 (considering comparator evidence "[t]ogether with" other evidence to establish pretext); *Gordon*, 246 F.3d at 892 (holding that comparator evidence "further emphasized" pretext established on other grounds). And, perhaps even more importantly, "a showing of pretext alone is not enough; the plaintiff must also show that the explanations are a pretext for the prohibited animus." *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 740 (7th Cir. 2013). McDonald hasn't made this showing.

For example, McDonald says Du-Comm's explanation that she was terminated because she allegedly brought reputational harm to Du-Comm is undermined by its prior treatment of Beguhl, who attempted to get out of his DUI arrest by bringing up his employment with Du-Comm and who had other 911 dispatchers talking about his DUI. But chatter among employees hardly equates to the local newspaper's reporting of the July 1 incident.

22

It's important to keep in mind that McDonald was tried and convicted of her offense. This alone arguably distinguishes her from the other proposed comparators. While Beguhl was disciplined for the prank 911 phone calls, there is no evidence that his conduct led to criminal charges, much less a conviction.

McDonald also argues that the timing of Du-Comm's decision to terminate her is suspect because the incident took place on July 1, 2019, and she wasn't terminated until December 16, 2019. This argument is a nonstarter. There's nothing suspect with respect to the timing of McDonald's termination. McDonald's pre-disciplinary hearing took place in November, and she was convicted of resisting or obstructing a police officer on December 6, 2019. She was terminated ten days later.

Finally, as previously discussed, Du-Comm's claim that it was well within its rights to consider a conviction for resisting or obstructing a police officer a more serious offense than a DUI has merit. Again, context matters. And it is not the Court's place to second guess Du-Comm's business judgment absent evidence of pretext, which is simply not present here.

Considering the evidence cumulatively, the Court concludes that no reasonable factfinder could conclude that McDonald's sex caused her termination. *See Igasaki*, 988 F.3d at 958; *Ortiz*, 834 F.3d at 765. Du-Comm's motion for summary judgment is granted with respect to McDonald's gender discrimination claims.

## II.    <u>Disability Discrimination Claims</u>

The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  A claim for disparate treatment based on disability under the ADA requires proof that (1) McDonald was disabled[6]; (2) McDonald was qualified to perform essential functions with or without reasonable accommodation; and (3) McDonald's disability was the "but for" cause of an adverse employment action.  *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019).  An IHRA claim for disability discrimination is analyzed under the same framework as an ADA claim.  *McKay v. Vitas Healthcare Corp. of Ill.*, 232 F. Supp. 3d 1038, 1043 (N.D. Ill. 2017).  Accordingly, the Court will analyze both claims under the ADA.

To survive summary judgment, McDonald must present evidence that would allow a reasonable jury to conclude that her disability caused her termination.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021).

Du-Comm first contends McDonald is not a "qualified individual" under the ADA.  A qualified individual means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 959 (7th Cir. 2014) (citing 42 U.S.C. § 12111(8)).  When determining whether an individual is a "qualified individual," courts consider (1) whether an individual possesses "the requisite skill, experience, education and other job-related requirements

---

[6] Du-Comm does not dispute this element for purposes of this motion.

of his employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Budde v. Kane Cnty. Forest Pres.*, 597 F.3d 860, 862 (7th Cir. 2010) (citing 29 C.F.R. § 1630.2(m)).

Du-Comm says McDonald is not a "qualified individual" because she plainly could not perform the essential job functions of complying with police officers' orders, timely and fully reporting off-duty conduct that affected Du-Comm's reputation or business, and cooperating with Du-Comm's disciplinary investigations.

Even assuming McDonald is a "qualified individual" for purposes of summary judgment, McDonald's disability discrimination claim fails because she has not come forth with any evidence from which a jury could reasonably conclude that her disability was the but-for cause of her termination, let alone *a* cause of her termination. As discussed in detail above, Du-Comm had multiple legitimate, non-discriminatory reasons for McDonald's termination, and there is no evidence of pretext. McDonald has failed to meet her burden and so the Court grants Du-Comm's motion for summary judgment on the disability discrimination claims.

### III.    Failure to Accommodate Claim

Finally, in her response to Du-Comm's motion for summary judgment, McDonald attempts to raise a failure to accommodate claim. Du-Comm argues that the Complaint does not allege such a claim and therefore McDonald is barred from asserting it now. McDonald responds that she is not required to plead legal theories and that she pleaded sufficient facts to support a failure to accommodate claim.

McDonald cites Paragraphs 15–24 and 27 of her Complaint. These paragraphs describe McDonald's alleged disabilities and recount how distraught she was after learning of the death her friend, Officer Lister, and Du-Comm's failure to provide a chaplain or remove her from the floor. She also references her request for information on the Employee Assistance Program. Du-Comm claims these allegations don't put it on notice of a failure to accommodate claim. The Court tends to agree.

"Generally speaking, an assertion of an ADA discrimination claim does not tee up a claim for failure to accommodate if it does not mention a need or request for accommodation." *Spring-Weber v. City of Chicago*, 2018 WL 4616357, at *9 (N.D. Ill. 2018) (citing *Hooper v. Proctor Health Care*, 804 F.3d 846, 852 (7th Cir. 2015)). Nothing in the Complaint suggests that McDonald made a request for accommodation that Du-Comm denied. Although Du-Comm's argument has merit, for the sake of completeness the Court will evaluate McDonald's failure to accommodate claim.

Failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" constitutes discrimination under the ADA, unless the employer can demonstrate that the accommodation would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A); *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018). To establish a failure to accommodate claim, McDonald must show: (1) she is a qualified individual with a disability[7]; (2) Du-Comm was aware of her disability; and (3) Du-Comm failed

---

[7] Again, Du-Comm does not contest this element for purposes of this motion.

26

to reasonably accommodate the disability. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 682 (7th Cir. 2014).

"[T]he standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000). As the Seventh Circuit explained in *Reeves ex rel. Reeves v. Jewel Food Stores*, it is only "[o]nce an employee requests a reasonable accommodation," that "the employer must . . . engage in a flexible, interactive process to identify the necessary accommodations." 759 F.3d 698, 701 (7th Cir. 2014). "Where the employee does not provide sufficient information to the employer to determine the necessary accommodations, the employer cannot be held liable for failing to accommodate the disabled employee." *Id.* at 702.

McDonald has expressly admitted that she never asked to be removed from the floor or provided with a chaplain on the day she learned of Officer Lister's death, and when she asked for information on the Employee Assistance Program on July 3, she was promptly given the requested information. McDonald's failure to accommodate claim does not survive summary judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, Du-Comm's Motion for Summary Judgment [84] is granted. Judgment is entered in favor on Du-Comm on all counts. Civil case terminated.

It is so ordered.

Dated: 4/19/2023

Charles P. Kocoras
United States District Judge